EVANS D. PRIESTON, ESQ.
Attorney for Defendant
JANIEL JAVIER
47-40 21st Street, 10th Fl.
Long Island City, NY 11101
(718) 424-2444
evansd.prieston@gmail.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
UNITED STATES OF AMERICA,                          19 Civ. 818-02 (PGG)

    -against-                                                    **DEFENDANT'S SENTENCING**
                                                            **MEMORANDUM**
JANIEL JAVIER,

                  Defendant.
-----------------------------------------------------------X

      Defendant was arrested without incident on November 20, 2019.  On April 16, 2021, defendant Janiel Javier pled guilty, before the Hon. Paul G. Gardephe, D.J. to conspiring with others to distribute and to possess to distribute 280 grams and more of cocaine, in violation of 21 U.S.C. § 841(b)(1)(A) and (C).  The following is defendant's sentencing memorandum:

      Under 18 U.S.C. § 3553(a), a sentencing court must "impose a sentence sufficient, but not greater than necessary, to comply" with the purposes of sentencing set forth in the second paragraph of the statute.  In undertaking its analysis, the Court considers the advisory sentencing range recommended by the Guidelines and any relevant Guideline policy statements, as well as other traditional sentencing factors, such as:  (1) the nature of the offense and history and characteristics of the defendant; (2) the purpose of sentencing; (3) the kinds of sentences available; (4) the Sentencing Guidelines; (5) pertinent policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted disparities among similar offenders; and (7) the need to provide restitution to victims. 18 U.S.C. § 3553(a).

1

Nearly twenty years after the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), it is now "emphatically clear" that the "Guidelines are guidelines – that is, they are truly advisory." *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc). The Guidelines are no longer "the only consideration" at sentencing. *Gall v. United States*, 552 U.S. 38, 49 (2007).  Rather, the Guidelines merely provide a "starting point" for the Court's sentencing considerations. Id.; accord *Cunningham v. California*, 549 U.S. 270 (2007). The Court is to impose its sentence after "mak[ing] an individualized assessment based on the facts presented" in each particular case. *Id.* The Court need not find "extraordinary circumstances to justify a sentence outside of the Guidelines range." *Id.* at 47.  As one district court judge has put it, the Guidelines' "most fundamental flaw is the notion that the complexity of human character and conduct can be rationally reduced to some arithmetic formula." *Ibid.*

Defendant's background

We will not rehearse the defendant's psychosocial biography here, as the Consulting Project, has done so, in intricate detail. *See*, Exhibit A.  Most importantly, Mr. Javier just turned twenty-five and is now taking steps to turn his life around, despite a very difficult and traumatic upbringing.

Mr. Javier had no relationship with his father, who was arrested and deported back to the Dominican Republic.  He grew up in the impoverished Inwood section of Manhattan with his mother, sister, aunt, and three cousins in a one-bedroom apartment.  His mother did her best to support her family, as a waitress, and recently as a building cleaner.  Their economic situation was precarious and Mr. Javier remembers his electricity being shut off regularly.  He was diagnosed with behavioral problems and learning disabilities.  He was placed in Special Education at a young age and would be constantly suspended and expelled from different

schools for aggressive behavior and violating school rules.

He became a daily user of marijuana at the age of twelve or thirteen. He also used other drugs and alcohol fairly regularly from that time. He did love playing sports, particularly, baseball. He had a dispute with his high school manager and was removed from the team. However, his mother sent him to the Dominican Republic to pursue his dream of playing professionally. However, at the age of seventeen he suffered a nerve injury in his elbow that ended his career. He returned to his mother's home at nineteen. At first he was motivated to succeed and was able to earn a high school equivalency diploma. However, he soon returned to the "streets" and began abusing drugs more than he used to. To make matters worse, Mr. Javier suffered a gunshot wound on November 4, 2018. He was admitted to St. Barnabas Hospital where he underwent surgery to repair his tibia and fibula, including rods, screws, and plates. He was hospitalized for sixteen days. He is unable to get physical therapy, as his surgeon ordered, while incarcerated.

Mr. Javier reported a minimal employment history, due to lack of education, motivation, and substance use, all contributing to his inability to maintain employment. In the summer of 2017, he obtained a seasonal position as a lifeguard for the American Pool Company, where he earned minimal wage. Also in 2017, for several months, he was employed installing windows for Skylines, earning $14 per hour. Prior to his arrest, he was working as a delivery driver for Uber Eats and Door Dash. He has additional sporadic employment at various grocery stores and gas stations and as a dishwasher. Mr. Javier completed 12 months of a carpentry program at Bronx Community College and Apex.

Since being incarcerated, Mr. Javier has worked diligently to turn his life around and gain employable skills. He has participated in a variety of Biblical study, educational and

vocational skills classes.  He has completed the following courses in hopes of pursuing his goal of becoming a real estate agent when he returns to the community: Business Ethics, Business Acumen Corporate Training, Time Management, Budget and Finance, Basic Bookkeeping, Customer Service, Investments, and Sales Fundamentals.  He is additionally participating in a Paralegal Training Course through the Blackstone Career Institute and as of July 2021, had completed 21 out of 31 exams, with a 97% grade average.  He is expected to complete the program in November 2022.

      Since October 15, 2020, Mr. Javier has been employed as an inmate companion, where he serves as a suicide watch orderly.  He has completed over 500 hours of service and has received two certificates of appreciation for his work.  Throughout his time as an inmate companion, his supervisor reported he has been "reliable and exhibited an eagerness to help and learn.  Mr. Javier attends his scheduled shifts on time, as well as required trainings."  His work is described as consistent and careful, ensuring the safety of individuals on suicide watch.  "He demonstrates empathy and positive regard for others and his stress tolerance has enabled him to succeed in dealing with some of the most challenging aspects of mental illness."  He takes initiative, is always looking for additional opportunity, is respectful of the working relationship with his supervisor, and has used every opportunity to increase his interpersonal effectiveness and communication skills.  According to his evaluation of performance, Mr. Javier works an average of 100 hours per month.  Due to his work ethic, his pay was raised to a Grade Two and a 50% bonus has been recommended monthly.

<u>Prior criminal background</u>

      As noted, Mr. Javier has had substance abuse issues for about half his young life.  This propelled him into the illegal narcotics trade.  He had two arrests within eight months in 2017,

for possession of narcotics with intent to sell.  Unfortunately, he was denied entry into a rehabilitation program, which, if he had been accepted, would have resulted in dismissal of the charges.  The reason for this, was that he apparently did not have a severe enough drug addiction.  So, the sentencing judge in New York County offered him five years' probation in exchange for a plea to both offenses, which he accepted on March 15, 2018.

Thus, his criminal history is relatively minimal and could have easily been deemed nil. The Government was cognizant of this fact when it executed a plea agreement, annexed to the Presentence Investigation Report ("PIR"), with this office. *See*, the divergent interpretations of defendant's criminal history, between the PIR and the plea agreement.

<u>Proper Sentence</u>

Subsection (2)(A) of Section 3553 provides that the Court should consider the need for a sentence it imposes "to reflect the seriousness of the offense, to provide respect for the law, and to provide just punishment for the offense."  This section of the Code essentially asks the Court to consider the defendant and his actions holistically, and to "provide just punishment" in light of all the facts known to the Court.  Accordingly, it is respectfully submitted that Mr. Javier be sentenced to a period of supervised release, but with *no* jail time, or, in the alternative, a sentence of twenty-four to thirty months.  It cannot be gainsaid that Mr. Javier will suffer greatly from a felony conviction and will be under supervision for a period of several years, thus all the factors above are satisfied, without the necessity of a jail sentence.  Significantly, the Presentence Report notes that *no statutory minimum* is applicable, under 18 U.S.C. § 3553(f)(1)-(5).

Subsection (2)(B) states that the sentence imposed "afford[s] adequate deterrence from criminal conduct."  Further, the Court must consider, specific deterrence, i.e., to protect the

public from further crimes of the defendant. 18 U.S.C. § 3553(a)(2)(B).  As shown fully above, Mr. Javier, who has support from his mother, sister, aunt, and girlfriend of several years, is determined to live a fully lawful, productive life.  Imposing a prison sentence, particularly a lengthy one, is not required to accomplish these ends.

Moreover, in considering a just punishment, this Court must consider the conditions of Mr. Javier's incarceration.  He has been imprisoned at the Metropolitan Correctional Center ("MCC") and the Metropolitan Detention Center ("MDC") since his arrest November 20, 2019.

Leniency is warranted due to the unusually harsh conditions at MCC and MDC.  It is particularly acute for Mr. Javier given his gunshot wound.  Since being incarcerated, he has not received physical therapy services and as a result, continues to experience swelling, sharp pains from his knee to his ankle, dull pain on a regular basis and stiffness in his leg. At times, he reported the pain is so intense it prevents him from sleeping. He has submitted multiple requests for medical attention, with no response.

The harsh conditions are exacerbated by the aftereffects of his gunshot wound and surgery.  In sentencing Mr. Javier, it is appropriate to consider the egregious conditions he has been subjected to while incarcerated. *See*, *United States v. Fajardo*, 2006 WL 3498640, at *4 (S.D.N.Y. 2006) (considering the conditions of pre-sentence detention for the purposes of determining the proper sentence when a downward departure was unavailable), *aff'd sub nom*, *United States v. Montero Fajardo*, 259 Fed. Appx. 359 (Wd Cir. 2008).

By the time of Mr. Javier's scheduled sentencing, he will have been incarcerated almost two years.  *All* of this time was in lockdown in a 10X10 cell with another inmate.  The harsh, unsanitary, and inhumane conditions at MCC and MDC are well documented, especially in the Covid-era.  Inmates are denied soap and basic sanitation supplies.  Some are forced to clean

toilets and sinks with body soap, because basic supplies are scarce. There is also an infestation of rodents and cockroaches. Also, family and counsel visits have been suspended.

Due to the aforementioned conditions at the MCC and MDC, downward departures were granted at sentencing, *See*, *e.g.*, *United States v. Juan Carlos Aracena de Jesus*, 20 Cr. 19 (PEA) (imposing a "substantial downward variance" in large part due to "dreadful" conditions at MCC); *United States v. Hector Rivera*, 16 Cr. 66 (AT) (recognizing that three months during COVID-19 is different than three months in normal times); *United States v. Morgan*, 19 Cr. 209 (RMB) (discussing the substandard conditions of confinement at both MCC and MDC and sentencing defendant to time served in part due to conditions at MDC); *United States v. Castillas*, 19 Cr. 863 (VSB) (reducing the length of sentence in part based on conditions at MCC during Covid); *United States v. Edwin Gonzalez*, 19 Cr. 708 (AKH) (granting downward variance in part due to conditions at MCC during Covid); *United States v. Jervis Cirino*, 19 Cr. 323 (JSR) ("[I]t is fair to say that conditions in the prison system now result in a harshness that is not the norm and that ought to be recognized by the court as a mitigating factor. In effect you are serving harder time every day you are in federal prisons.").

In light of all the above, this Court should issue a sentence of supervised release and with no period of incarceration, or in the alternative, a sentence of twenty-four to thirty months.

Dated: Long Island City, NY
October 12, 2021

Respectfully submitted,

*Evans D. Prieston*

Evans D. Prieston, Esq.